Mr. Arthur, when you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court. My name is Samuel Arthur, and I represent Mr. James B. Enzor in his appeal of two cases from the District of South Carolina. Mr. Enzor asserts that, well, let me back up. These cases relate to a traffic stop conducted by Officer Enzor. He's a former officer with the South Carolina Highway Patrol. The traffic stop was conducted on October 14, 2012. The claims asserted by Mr. and Mrs. Newkirk relate to their arrests on that day in connection with the traffic stop. Specifically, Mrs. Newkirk, Catherine Newkirk, claimed that Officer Enzor employed excessive force in connection with her arrest. And her husband, Jerome Newkirk, asserted that Officer Enzor unlawfully arrested him. On behalf of Officer Enzor, I file a motion for summary judgment as to each case and asserted qualified immunity. The District Court denied qualified immunity in both of the cases with respect to the excessive force claim in Catherine Newkirk's case and the unlawful arrest in Jerome Newkirk's case. Enzor appeals those decisions by the District Court and asserts that this court is vested with jurisdiction by virtue of the collateral order doctrine acknowledged by the Supreme Court. It comes down to whether there is a question of fact with respect to the immunity, which Johnson has held is not reviewable, or whether this is a matter we can handle, in which case it falls under the exception where immunity issues are appealable. Isn't that really what it comes down to? Yes, sir. Your Honor, with regard to jurisdiction, certainly acknowledge that the Johnson v. Jones case provided that there are some limitations with regard to appellate court review and denial of qualified immunity. Then the Supreme Court later followed that with Behrens v. Pelletier and explained that it's not simply a matter of whether the issue relates to a question of fact that precludes the review. But if the appeal is brought on issues that relate to a novel question of law that is decided by the District Court, then the appellate court would be free to review the case. So what's the novel question of law in this case? Your Honor, in this case, we would assert that in a qualified immunity case, the law requires the District Court to first identify the right that the complaining party is claiming has been violated. That's not novel. No, sir, that's not novel. What we feel is novel is our assertion in this case that the District Court simply skipped its required analysis of qualified immunity by framing the rights issues at play and then relied on a determination made in its analysis of the merits of the claims. Well, I thought the District Court simply found that there were disputed issues of fact that precluded it from deciding the question of qualified immunity. And if that's the case, then we don't have jurisdiction. Well, Your Honor, we would argue that there's a distinction between the case where- Answer this question. Do you agree or disagree that the court below, the District Court, determined that there were disputed issues of fact in this case that matter? Well, Your Honor, I would agree that the District Court found there were disputed issues of fact that matter to the claims with regard to the summary judgment analysis of the claims of the merits. But I don't think the court- I think the cases may be different. But focus just a second with respect to Judge Diaz's question on Jerome. It sounds to me as if the court was unable to resolve what the officer said to Jerome and what he said to them, whether they were threatening words or whatever words would justify some kind of action. And it seems to me that if Jerome just said what he said, he said, the officer would clearly know he shouldn't have arrested him. On the other hand, there is a small class of cases where what is said may justify an arrest. And that cannot be established from this record. And so the court said there was a question of fact on that. I'm not sure with respect to the driver whether that analysis is the same. And my big question is what evidence is there of any kind that there was excessive force and an officer would reasonably believe that in arresting somebody, there has to be some force in order to make an arrest. That, to me, is a little different from Jerome's case. But the question still remains, Judge Diaz's question was whether the district judge found there to be a question of fact. He found it with respect to both cases, I guess, which would preclude material fact, which would preclude interlocutory appeal. Your Honor, our position simply is that the district court found disputed issues of fact with regard to its analysis of merits and then said, well, I can't go any further. It also goes to the immunity, doesn't it? Isn't it important to the immunity whether the officer could believe that he could arrest Jerome? Yes, absolutely, Your Honor. But we believe that there is a distinction between the analysis of disputed issues of fact, between the summary judgment analysis and the qualified immunity analysis. As I say, the district court relied on the Bethaken case, and I may have mispronounced that, but for the proposition that if there are disputed material issues of fact, that the analysis cannot be reviewed. But in that case, this court determined that first, well, in that case, the court identified the right that was at issue and whether or not the right was clearly established. And then whether or not there were questions of fact that necessarily had to be resolved before a determination could be made as to whether or not the conduct violated the right. And the issue that we're asserting in this case is that the court simply can't sidestep its obligation to identify the right that's being challenged and then determine whether or not it's clearly established before then looking at the undisputed facts and determining whether or not qualified immunity is supported. And we argue that the court can't simply rest on a determination that there are disputed facts as to the claim on the merits and say that in there we cannot do any further. We understand the distinction between the merits and the immunity facts, but there is a little bit of an overlap. And for instance, if Jerome stood up and said, you can't arrest my wife, that's unfair. And that's all he said and said, you're under arrest. A reasonable officer in that circumstance would know you cannot arrest somebody for making that kind of a statement. But we don't know what Jerome said in this record, do we? Well, Your Honor, we know some of what he said from the video. I understand, but there's also some that sound discernible. And that's where the court said, I can't resolve the difference between what the officer is claiming and what Jerome is claiming. Isn't that where the judge came out? I would concede that, Your Honor, but there are no cases that I have found that say that the determination of qualified immunity under the circumstances of Jerome Newkirk's arrest hinges upon what was said between the two individuals. How can we determine that a reasonable officer could believe that he wasn't violating the law without knowing what was said? Because this is not a case where an officer sees somebody coming at him with what he perceives as a gun. And the officer fires the shot. And it turns out it wasn't a gun at all. We've had that case. And we've said in that case, even though there's a dispute of fact about whether he had a gun or not, the officer reasonably could believe that the man had a gun and could fire the shot. This case, the whole immunity, whether the reasonable officer could believe that he could arrest or not, may determine on what the officer heard. But what the officer heard is disputed. Isn't it? Well, Your Honor, I would argue that it's not relevant to the disposition of the qualified immunity because there's no evidence that the officer relied upon what was said by Mr. Newkirk. Well, how could he possibly not consider what was said in making the arrest? Are you saying that he was free to do whatever he wanted to Jerome? No, Your Honor. I'm simply saying that the officer has not relied upon Mr. Newkirk's comments to support his decision to arrest. Well, what did he rely upon? Mr. Newkirk's actions in exiting the vehicle and not responding to the instructions that were clearly given when Mr. Newkirk got out of the vehicle and attempted to verbally challenge the arrest of Mrs. Newkirk. Okay, so verbally challenge suggests that you need to consider what was said. If he got out of the car and said, Officer, I really am admiring the work that you're conducting with respect to the arrest of my wife. Are you saying that he could be arrested for that? No, Your Honor. I'm suggesting that… So that's why it matters. It matters what he said, right? I can't agree with that, Your Honor, because when the officer gave his explanation to his supervisor after the fact, it had nothing to do with what Mr. Inser said to him. He did not react based on what Mr. Newkirk said to him. He did not react and then arrest Mr. Newkirk based upon Mr. Newkirk's comments. He felt like Mr. Newkirk was not physically following his instructions by returning to the vehicle. And I don't think… All right, so if he had simply stepped out of the car and said nothing, you're suggesting that that would have been… and not gotten back in the car after receiving a command from your client, that would have been enough to justify an arrest? No, Your Honor. I wouldn't go that far. But I'm suggesting that it's possible to review the video and that the encounter between Mr. Newkirk and the officer is clear on the video and that a judge in analyzing qualified immunity under these circumstances could look at the video and determine whether or not any bright lines were crossed. But isn't that the whole point here? The judge did look at the video and in trying to determine if there was qualified immunity, determined that there were unknowns with regard to the specific facts and the particular circumstances and that therefore there would not be a decision on qualified immunity yet because material facts were in dispute. The video doesn't answer all the questions. It raises more questions than it answers, perhaps. That may be true, but our position is that in order for any disputed facts to even matter, the court has to define what the rights are at play and define whether or not they are clearly established. Didn't Judge Gergel do that? I mean, he talked about an unconstitutional arrest. He talked about lack of probable cause. What more did he need to do? Well, Your Honor, with regard to Judge Gergel's analysis of the false arrest claim in Catherine Newkirk's case, he discussed qualified immunity and the responsibilities of identifying the right that is at issue and identifying whether or not it is in determining whether or not it's clearly established. And so he understands the process, but for reasons that I do not know, he chose not to engage in the process when analyzing the qualified immunity claims with respect to the false arrest of Mr. Newkirk and the excessive force claim that Mrs. Newkirk brought. Your Honor, to conclude, we simply request that this court undertake to do the required analysis, determine what the rights are, determine whether or not there are any disputed facts that need to be resolved and make a decision. Thank you. All right. Thank you, Mr. Arthur. You have some rebuttal coming. Mr. Kenney? Thank you, Your Honor. May it please the court. This court should dismiss this appeal or, in the alternative, affirm the district court's decision for primarily two reasons. First, this court has no jurisdiction under the collateral order doctrine  a legal question that is separable from the underlying factual dispute and that's dispositive on the merits, and we would submit- Let me ask you about, I asked your colleague a lot about Jerome, but about Catherine, it looked to me like every scenario, regardless of whether it's her scenario or the officer's scenario, has at most the officer pushing her while he's trying to make an arrest. And, of course, as you know, an arrest is the physical seizure of a person, and it seems to me that an officer could reasonably expect that he could turn a person around to put the cuffs on, he could push them up against the car. Most arrests that we see where it claims the person, the officer takes the person down to the ground, pulls the hands back and puts the cuffs on. But in every case, there is force necessary to accomplish the arrest. And I couldn't see anything where we would conclude the officer would believe that he was acting beyond his right to put, how to put cuffs on. It's not whether to arrest her, that's not before us that issue. What's arrested before us is whether during the arrest the officer committed excessive force. And I just wonder what your explanation is. How does he accomplish putting cuffs on somebody, committing the person to custody without some physical force? First, Your Honor, you're correct. Any seizure under the Fourth Amendment requires some application of force. Now, putting on cuffs, I mean, in this case he has a right to put on cuffs, doesn't he? No, Your Honor, we disagree. You mean you can't when you arrest somebody? That means every one of these guys who violates the securities laws that gets arrested in New York and marched out into the street with cuffs on, the officers have violated the Constitution? Well, Judge Niemeyer, I think your question assumes that there was probable cause to make an arrest here. No, no. I am assuming that. Okay. But because the claim here isn't the probable cause. The claim here is excessive force. And excessive force assumes that he had a right to make. If he didn't have a right to make the arrest, but I don't see that being the ruling. I see the question here is whether in making the arrest did he use excessive force. We believe he did. Okay. Now, what's the force that the officer used? Well, Your Honor, I mean, I think it's important, first of all, to understand that. Could you just answer the question? What was the force that the officer used? The force that he used is, first of all, he comes around the back of the vehicle. He puts his finger in Mrs. Newkirk's face and begins raising his voice at her and says, Now, let me tell you something. You're under arrest. Immediately begins, push her up against the vehicle and grab at her, pull and drag at her. And, you know, Your Honor, I think it's important. And what else? What else? Continue the scenario. Continues to push her, pushes her to the side of the road. And I think that. And then what's he do? Well, eventually, eventually he puts handcuffs on her. I thought there was evidence in the record from her that, and this occurred off screen apparently, that he continued to push her around and twist her hands and then further that she was thrown to the ground by the police officer. That's correct, Your Honor. Well, isn't that, I mean, that seems excessive to me. Well, it is. And I think what's important for the court to consider is that, you know, reasonable people might be able to disagree about what was excessive or not in a particular situation. Well, except that I would tend to agree with Judge Niemar. Obviously, a police officer has to use some level of force to make an arrest. And at least from what I saw on screen, although your client was insisting that she was not resisting, I don't think she was cooperating with the officer. What concerns me is what happens off screen where there is a dispute of fact. She says that he continued to twist her hands and that then the officer threw her to the ground. He says that after she was handcuffed, she would not comply with his directions to get into the police vehicle and that she lied on the ground and would not get up. One of those versions is true. One is not. That seems to me a classic dispute of material fact on the successive force claim. Judge Diaz, I agree with you, and I think the questions that I'm hearing from the court really reflect the need to have a jury resolve this question. Judge Niemar, I don't disagree that a reasonable person could look at the facts in this case and find against Mrs. Newkirk. That is a possibility. But the district court was supposed to— I'm not talking about finding against. I'm trying to identify. We're trying to interpret what objectively a reasonable officer felt he could have done in this circumstance, what force was necessary. And the excessive force cases that we have are far beyond this pushing and shoving that comes in connection with putting on cuffs and submitting somebody to the custody of an officer. To say that this kind of pushing and shoving when taking somebody under control potentially raises an excessive force case is difficult for officers. They're not going to know how to conduct arrests. Well, Your Honor— Part of this is the message we give to police officers. Yes, Your Honor, and I understand that. I do want to address, I mean, you know, part of the analysis is the facts and circumstances of the particular arrest. We had a motorist who, to be clear, traffic stop was complete. He removes her from the vehicle in order to engage in this activity. And so we're not conceding here, and we didn't blow, that the arrest is proper. But let's assume it was. You have to look at the facts and circumstances. We're not assuming it. I didn't understand it to be raised. I understand that the only issue you raised, or that was raised, is excessive force came and whether there was immunity for the officer's conduct. And that goes to an objective examination of whether a reasonable officer would have thought that he was violating the Fourth Amendment when he was pushing and shoving and trying to get cuffs on and getting her into the car. Your Honor, I do want to be clear that we did raise an unlawful arrest claim. And if we have a quarrel with the district court, it's in how that was resolved. But to go back to your question, I mean, you know, the Graham analysis typically looks at the severity of the crime, the threat posed by the motorist, is looking at whether or not the suspect is a flight risk, those types of factors. Now, that's a fact-intensive inquiry. And what we have here is we have an officer who, based on a comment by a motorist, removes her from the vehicle by the edge of the roadway. And again, Mrs. Newkirk was coming around the back of the vehicle to speak to him. Instead, he meets her around the back left corner of that car and immediately begins pushing her up against the car, screaming at her, grabbing at her, and eventually, as Judge Diaz noted, pulling her to the ground. Would he be allowed to do that when he arrests somebody? Just give me a scenario where somebody can be arrested and put physically in handcuffs and lead and put into a car, pushing and shoving. So, for instance, okay, if Mrs. Newkirk made threatening gestures, if she attempted to run, if she pushed him back, not once. I think the classic example of that is the way that Jerome was arrested. He got out of the car. The other officer told him to turn around, put his hands behind his back. He did exactly what he was told. He responded to those commands. The cuffs were put on. There was no pushing or shoving with respect to that arrest. So the question is whether or not, in this circumstance, given your client's reactions to the officer, whether or not what the officer did was reasonable. And, again, I go back to what happened offscreen where she says she was thrown physically to the ground. If he had no justification to do that, then that seems to make out to me an awful claim of excessive force. Your Honor, I agree. I agree. If I could, you know, I do want to turn to some of the other clearly established rights. I mean, I think one thing we did not hear from our friends on the other side this morning is what exactly, what analysis the district court failed to conduct. And you don't get to show up before this court unless you're prepared to say either there wasn't a clearly established right or that it was not a violation of the Constitution. And I don't know what those arguments are by the former trooper here this morning. But, you know, in terms of disagreeing, criticizing the police, refusing to leave the scene of an arrest, you know, those cases you can look at Hill. You can look at Lewis. You can look at this court's decision in Wilson v. Coteau. And there's a long line of cases that you can look to to find that the rights of the Newkirks were clearly established at the time. And so, you know, we would submit that. Just to be clear, with regard to Mrs. Newkirk, that right is the broad right of freedom from excessive force during an arrest, or is it something narrower? And I think to what Judge Niemeyer's been asking you, a police officer can use force when someone's resisting arrest. So was it the fact that she alleges she was hit on the back of her legs? What's the excessive force here that violates her constitutional right? Yes, Your Honor. That would be part of the analysis as well. I mean, it's everything from the pushing, the dragging to the ground, the handcuffing, striking on the back of the leg, all of those things. Is there evidence in the record of dragging to the ground, or was it that the back of her legs were hit, it was a jolt enough to, I'm quoting now, enough to bend her knees to get her to the ground? And I think this is from her testimony. It is. So where's the dragging? Let me back off of dragging. Your Honor is exactly correct. That is her testimony as to what happened. And, you know, frankly, I mean, the video is not. You don't agree that she was thrown to the ground? I agree she went to the ground, and that was a result of former trooper Ensor's application of force. She ends up on the ground because of what he did, because of his application of force. But she says it wasn't a hard hit. That's a quote from her testimony. Yeah, but, Your Honor, the portion that you cited from her testimony, as I understand it, is basically she's struck in the back of the knees to take, you know, so that her body can no longer support the weight. Because she wouldn't get in the car. Well, Your Honor, I understand, and I know this gets back to sort of what we've been discussing about whether the scope of the force is reasonable under the circumstances. And I think, listen, I'm not prepared to tell the court, okay, certainly there was another way that Mrs. Newkirk could have handled this encounter with Trooper Ensor, okay? Mr. Newkirk is perhaps an example of that. But the question really is whether 12 citizens ought to be allowed to decide whether this civilian, this woman. I think the question is a little different. The question is at this stage whether we subject an officer's personal assets to a judgment when he claims that in the circumstances confronting him he had a reasonable belief to do what he did. He claims that he was trying to submit her to an arrest. And she was resisting all the way. And the district judge made those conclusions, that she resisted the whole time. Now, the question is what's reasonable force in this regard? It doesn't look to me like she was hitting a head. She wasn't struck. They didn't bring out the baton. They did some pushing and shoving and tried to get her in the car. But if we're going to start drawing lines about whether she went to the ground because of the pushing and shoving and she kept resisting, we're going to micromanage every arrest that's going on, which is inherently a force-ridden, I mean, it requires force to accomplish an arrest, unless you did do as Mr. Jerome did and put your hands behind your back. Your Honor, we're not insensitive to the court's concern and the need to give police officers clear guidance. But I do want to quarrel with two premises, the first being the district court did not find that she was resisting. I mean, we turned it as noncompliance. I mean, we would concede that, okay? But the second point is I do think it's important for the court to consider the fact that, you know, we disagree that there's probable cause to make this arrest. I mean, this is the issue. And I understand, Your Honor, we don't have the pellet right to have that argument heard at this stage. At some future point, we may. But, you know, I do think that if you look at, you know, reasonable people could disagree about whether the application of force to, again, a woman who is accused of speeding, okay? This is a motorist who's accused of speeding and who has received a citation. Did she say to Ensor, you'd better call for help because you're going to need it? Is that on the recording, the video recording? Your Honor, I don't know. I don't know. You know, it's possible. But, you know, as I understand the Newkirks comments, Mr. Newkirks says, don't worry, honey, we're going to sue him, something to that effect. You know, I don't see anything that those comments in any way allows Trooper Ensor to do what he did. I mean, verbal comments toward the police of a far more malicious nature have been held insufficient to justify an arrest. But we're not talking only verbal comments. We're talking the resisting arrest as well. With respect to Mrs. Newkirk? Mrs. Newkirk, that's correct. Yes, Your Honor. I should have been clearer. That is correct. That is correct. Unless there are additional questions.  Thank you. Thank you. All right, Mr. Arthur. Thank you, Your Honor. First, I'd like to briefly respond to the questions about what was on the video and what was not on the video and whether or not that's relevant to the qualified immunity analysis here or the decision of the district court. It is clear from the district court's order that it acknowledges that there were some things that occurred on the video that he could not see. And he suggested that those were disputed facts. However, he didn't say what the conduct was that was subject to a consideration of whether or not it violated Mrs. Newkirk's civil rights. Granted, she may have said he continued to twist my arms and I went down to the ground. But he did not, the district court does not say if that is in fact the case, then that conduct violates her civil rights. And he disputes that and that is a disputed fact and therefore I cannot rule as a matter of law that he's entitled to qualified immunity. If there were more than simply twisting of the arms and her going to the ground in connection with the officer's efforts to place her in custody, I would suspect that it would be included in the briefs. Mr. Newkirk was certainly in a position to view what was going on. He hasn't testified that there was any gratuitous use of force by any officer that was outside of the view of the camera. Mrs. Newkirk's testimony is limited to the fact that Officer Ensor continued to struggle with her and with his hands on her and may have twisted her arms and that she went to the ground. But had the court framed the issue and said, here's the right that she claims was violated and in other words, continuing to twist her arm after the cuffs have been placed, and it's clearly established that an officer cannot do that without violating the arrestee's rights under the Constitution, then there might be a question of fact that would need to be resolved before the issue could be determined. Our overall position in this case is that the court, under this circuit's finding in Pritchard v. Alford, I believe it is, is required to frame the issues with regard to the qualified immunity analysis. While it is true that disputed issues of fact may ultimately prevent a granting of qualified immunity on behalf of the officer, the court has a responsibility to determine... Why do you say that? That's a concession. It just gives away your case. No, Your Honor, I don't think so because I think there is a distinction between disputed facts in the summary judgment context and disputed facts, excuse me, in the summary judgment analysis of the merits of the claim versus summary judgment. You didn't say that, you said it was immunity. In other words, the question on immunity is whether the facts put in question whether immunity can exist. And my suggestion in my questions to your colleague were really, let's accept the facts that Catherine relates and ask whether a reasonable officer would have believed that he was violating the Fourth Amendment when doing that. And the fact she relates is that she was resisting and she wasn't agreeing because she didn't like being arrested. But the arrest was taking place and when she was even asked whether she was thrown to the ground, she said, well, it wasn't, she says, really what they did is they hit the back of my legs and it felt like I was being thrown, but it wasn't that hard. It was in order to get me to the ground. And it seems to me that's all, and there were two officers, they were trying to get her into the car. Now, you just take her description and even if it went over the line by a fraction, is that the type of thing we're going to micromanage? We're not even asking whether that was reasonable force. We're asking whether a reasonable officer could have believed that he was conducting an arrest in an awful manner. Correct, Your Honor. And my response is that before the court can determine whether or not that fact is a fact that's in dispute and would prevent immunity, it first has to determine, Your Honor, may I finish your response? It first has to determine whether the resolution of that fact is even material to a determination of the immunity. We understand the distinction between factual disputes on the merits and immunity facts. Thank you, Your Honor. All right, we'll come down and break counsel and proceed on to the second case.
judges: Paul V. Niemeyer, Albert Diaz, Irene M. Keeley